**JAMIE ELIZABETH SCHMID**
California State Bar No. 339135
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666

Attorneys for
Jonathan Bodine Bonyhard

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   v.<br><br>JONATHAN           BODINE<br>BONYHARD,<br><br>                Defendant. | CASE NO.:   25-CR-01227-BTM<br><br>Hon. Barry Ted Moskowitz<br>*Evidentiary Hearing*<br>Date: June 26, 2025<br>Time: 1:30 p.m.<br><br>**Mr. Bonyhard's Reply to Government's Response to His Motion to Suppress Statements** |

Mr. Bonyhard respectfully submits this reply to the government's response to his motion to suppress filed on June 12, 2025. Dk. 18.

**I.     Mr. Bonyhard invoked his right to counsel and this invocation was not too anticipatory.**

The government states in their response that there are reasons to "doubt the truthfulness" of Mr. Bonyhard's declaration. Dk. 18 at 14. In support of his conclusory statement, the government points to video at the security counter where officers patted down Mr. Bonyhard. The government notes that "[t]here is no mention of an attorney during this interaction." *Id.* The government disclosed this security counter video to counsel on June 2, 2025. Assuming the government had this video in their possession since February 27, 2025, it was only disclosed to Mr. Bonyhard after he filed his motion

1

**25-CR-01227-BTM**
MR. BONYHARD'S REPLY TO MOTION TO SUPPRESS STATEMENTS

to suppress and his declaration – about 3.5 months after his arrest. In this video, we hear Mr. Bonyhard answering questions and making statements that were not previously disclosed to Mr. Bonyhard or Counsel.

As soon as Counsel received the video, Mr. Bonyhard reviewed the video and filed an amended declaration. Dk. 17. In this amended declaration, filed before the government's response, Mr. Bonyhard explained, under the penalty of perjury, that he misremembered the first time he asked for an attorney. Dk. 17 at Exhibit D. The government's response does not address this amended declaration nor does it explain why the whole declaration, made under the penalty of perjury, should be deemed "untruthful" for the sole reason of misremembering one instance of his invocation of his right to counsel. As explained in the amended declaration, the video refreshed Mr. Bonyhard's recollection and he was mistaken as to when he asked for counsel the first time. *Id.*  He believes the first time he asked for an attorney was when he was taken out of his car at the port of entry. *Id.*

The government also notes in their statement of facts that Customs and Border Protection Officers were interviewed as to their interactions with Mr. Bonyhard and "none recall him ever requesting an attorney." Dk. 18 at 4. However, the word "recall" is important here. Just because none of the officers "recall" or remember Mr. Bonyhard asking for an attorney doesn't mean his requests did not happen. Rather, the government is inquiring 97 days after the fact about an interaction with one individual. These CBP officers have likely talked to thousands of people since their interactions with Mr. Bonyhard. Therefore, the CBP officers inability to remember an event from months ago does not mean that Mr. Bonyhard's declaration, made under the penalty of perjury, is untrue. On the stand, these officers would likely admit to the fact that Mr. Bonyhard may have asked for an attorney, but they simply can't remember or recall such an event. This is an important distinction.

Now turning to the government's anticipatory argument. In their response, the government makes a brief argument that even if Mr. Bonyhard invoked his right to

counsel, his invocation was anticipatory. Dk. 18 at 14. The government states that the "Supreme Court has never held" that such invocation can occur outside of a custodial interrogation. *Id.* at 15. Importantly, the case cited by the government, *McNeil v. Wisconsin*, involved a completely different set of facts. The question in *McNeil* was whether a defendant could invoke their Sixth Amendment right to counsel at a preliminary hearing and then use that same invocation days later at an interrogation as a *Miranda* invocation of counsel.  However, the government skips over important case law that tells us that the distinction is not so black and white. And in fact, case law supports the fact that Mr. Bonyhard did invoke his right to counsel.

Admittedly, "[a] statement concerning an attorney made before interrogation begins is far less likely to be a request for attorney assistance during interrogation than a similar statement made during custodial interrogation." *United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir. 1999)(citing *Grant–Chase v. Commissioner, New Hampshire Dep't of Corrections,* 145 F.3d 431, 436 n. 5 (1st Cir.), *cert. denied,* 525 U.S. 941, 119 S.Ct. 361, 142 L.Ed.2d 298 (1998); *see also United States v. Scurlock,* 52 F.3d 531, 537 (5th Cir.1995). However, "far less likely" does not mean never or seldom.  Rather, Courts must look at whether a defendant  "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Doe* at 1166 (citing *Davis v. United States,* 512 U.S. 452, 459 (1994).

Take *United States v. Doe.*  In *Doe*, the defendant asked an agent "What time will I see a lawyer?" *Id.* The defendant asked this question before "being read his *Miranda* rights, before being interrogated and even before biographical questioning began." *Id.* In this case, the Ninth Circuit held that the request of the defendant was related to "the course of the judicial process" and was an inquiry "regarding the time at which appointed counsel would be made available." *Id.* Therefore, it was not an anticipatory invocation of a right to counsel because a reasonable officer would have understood it to be a question of timing – not an invocation. *Id.*  *Doe* tells us that we have to focus

on the wording of question the defendant asks and ask whether or not a reasonable officer would have understood it to be a request for counsel.

In contrast, take *United States v. Hinkson*, the district court was "unpersuaded" by the government's arguments that the defendant's question of "can't I call my lawyer" were invalid as anticipatory. *United States v. Hinkson,* 2004 WL 7333646, at *7 (D. Idaho Dec. 22, 2004). The defendant's question happened post-arrest and after being told that the FBI were there to speak to him. *Id.* The District Court explained:

> The actions were too close in time for the Court to decide that Hinkson's request to call his lawyer was unreasonably untimely. It would be arbitrary and unjust to require a defendant in these circumstances to wait until after the first custodial question is asked to effectively assert his right to counsel.

*Id.* at 8.

The language of the district court brings up two important points. First, interrogation must be imminent in some sense of the word. *See, e.g., United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004) ("For the protections of *Miranda* to apply, custodial interrogation must be imminent or presently occurring."); *United States v. Muick*, 167 F.3d 1162, 1166 (7th Cir. 1999) ("in order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be imminent") (internal quotations omitted); *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) ("*Miranda* rights may be invoked only during custodial interrogation or when interrogation is imminent"). Second, the Court must think about whether denying Mr. Bonyhard's request for counsel before his formal interrogation would be unjust or arbitrary. Mr. Bonyhard states in his declaration that on three occasions he asked to call his attorney. Dk. 17 at Exhibit D. Importantly, the third time Mr. Bonyhard asked for an attorney when he was told he was formally under arrest, and when he knew interrogation was imminent. *Id.* Like the defendant in *Hinkson*, it would be unfair and arbitrary to require Mr. Bonyhard "in these circumstances to wait until after the first custodial question" in order to effectively assert his right to counsel. 2004 WL 7333646, at *8.

Therefore, Mr. Bonyhard asks this Court to recognize his prior requests for counsel as unambiguous. The reinitiation by the agents violated *Edwards,* this Court must suppress his statements.

**II.    Mr. Bonyhard's statement of "If we could strike that last line, that would be great" was an unequivocal request for counsel**.

After reading his *Miranda* rights, Mr. Bonyhard read the line out loud: "I have read or someone has read to me a statement of my rights, and I understand what my rights are. At this time, I'm willing to answer questions without a lawyer present." Dk.15, Exhibit B at 15:25. Immediately after this Mr. Bonyhard stated, "**If we could strike that last line, that would be great***." Id.* at 15:44.

This is undoubtably an unequivocal request for counsel. This was a request that "clearly expressed" Mr. Bonyhard's desire to deal with police only through counsel. *Edwards v. Arizona*, 451 U.S. 477 (1981).  By asking to "strike that last line," Mr. Bonyhard stated that he did not want to answer questions without a lawyer present. There can't be a much clearer invocation than this. *See Smith v. Illinois,* 469 U.S. 91, 97 (1984) (deeming a suspect's statement, "Uh, yeah, I'd like to do that," upon hearing of his right to counsel a clear invocation); *United States v. de la Jara,* 973 F.2d 746, 750 (9th Cir. 1992) (deeming "Can I call my attorney?" or "I should call my lawyer" a clear invocation of the right to counsel); *Robinson v. Borg,* 918 F.2d 1387, 1389 (9th Cir.1990) (holding "I have to get me a good lawyer, man. Can I make a phone call?" a clear invocation of the right to counsel); *Shedelbower v. Estelle,* 885 F.2d 570, 571–73 (9th Cir.1989) (holding "You know, I'm scared now. I think I should call an attorney" a clear invocation of the right to counsel).

Moreover, because Mr. Bonyhard's invocation was clear, the agent should not have asked *any* follow-up question. Rather, the correct response to Mr. Bonyhard's request was a simple unambiguous "yes." *See Alvarez v. Gomez, 185* F.3d 995, 998 (9th Cir. 1999). The Ninth Circuit has not condoned "clarifying" questions to an unequivocal invocation of the right to counsel. *See Anderson v. Terhune*, 516 F.3d 781,

5                                                    **25-CR-01227-BTM**

789 (9th Cir. 2008) (en banc).

Furthermore, invoking one's right with language deferential to law enforcement <u>does not</u> make an invocation unclear. *Mays v. Clark*, 807 F.3d 968, 978 (9th Cir. 2015) (holding that an invocation can be deferential and still be unambiguous); *Sessoms v. Grounds,* 776 F.3d 615 (9th Cir. 2015) (holding that the phrase "There wouldn't be any possible way that I could have a—a lawyer present while we do this?" was a clear and unambiguous invocation). Politeness doesn't dispel clarity. *Id.* at 626-27.

Here, the government cites to *Davis* and conclusory states that Mr. Bonyhard's invocation is "at best ambiguous." Dk. 18 at 16. However, the government doesn't explain how Mr. Bonyhard's invocation is anything like that in *Davis. Davis v. United States*, 512 U.S. 452 (1994). Nor does the government explain why Mr. Bonyhard's statement is "at best ambiguous." Unlike *Davis,* where the defendant asked, "[m]aybe I should talk to a lawyer," Mr. Bonyhard was not asking whether he *should* speak to a lawyer. Mr. Bonyhard was deferentially asking whether he could have a lawyer ("If we could strike that last line"). *See Sessoms v. Grounds* 776 F.3d 615 (9th Cir. 2015).

The government spends pages of its response detailing Mr. Bonyhard's and the agent's follow-up conversation involving his *Miranda* rights. However, these conversations do not matter and are only a distraction. Once Mr. Bonyhard invoked his right to counsel unequivocally, as he did here, the agent only option was to terminate the interrogation – not to continue to follow-up.

**III.    The agent's promise that what Mr. Bonyhard said, "isn't going anywhere" and that he won't "provide sensitive information to anyone" are the very type of promises that rendered his statement involuntary, and *assuming arguendo* there was valid Miranda waiver, these promises also rendered the waiver invalid.**

In its response, the government focuses on the voluntariness aspect of the agent's promises but it fails to address Mr. Bonyhard's separate argument that the subsequent promises by the agent rendered his *Miranda* waiver invalid.[1] The argument

---

[1] Again, this is assuming *arguendo* that this Court does not find a previous invocation of the right to counsel.

is two-fold. *See United States v. Lall*, 607 F.3d 1277, 1287 (11th Cir. 2010) (holding that the promise not to use the defendant's statements against was sufficient to "undermine completely the prophylactic effect of *Miranda* warnings"). In *Walton*, the Third Circuit explained that:

> Given the circumstances, there was no reason for Walton to disbelieve Montford that nothing he said would be used against him, and to rely instead upon the *Miranda* warnings he had been given the previous day. Indeed, the *Miranda* warnings of the previous day and Montford's assurances during the park bench meeting appear exclusive of, and inconsistent with, one another. A person without prior exposure to the criminal justice system, even one with Walton's intelligence and education, could easily be taken in and induced to speak under these circumstances.

*United States v. Walton*, 10 F.3d 1024, 1030 (3d Cir. 1993).

Therefore, as to the *Miranda* argument, Mr. Bonyhard incorporates the arguments made in his original motion and asks this Court to find that the agent's promise undermined the prophylactic effect of the *Miranda* warnings given to Mr. Bonyhard.

As to the voluntariness argument:  It is a scary practice indeed that an agent can read an individual his *Miranda* rights, but then later tell that same individual that what he said, "isn't going anywhere." Which is exactly what the agent did in this case.  The government spends paragraphs trying to downplay the matter-of-fact language used by the agent in this case. For example,  the government states that  "SA MacLean's promise that the information would not be released to some random person is directly in response to BONYHARD's concerns that his statements would leak out." Dk. 18 at 22. Except, that isn't what the agent promised. The agent stated, "And what you tell me isn't going anywhere…" and "I'm not going to provide sensitive information to anybody."  The agent responded to Mr. Bonyhard's concerns and lied to him and told him that what he said, "wasn't going anywhere." Contrary to the government's contention, the agent did not qualify his promise to a "random person."

In his declaration, Mr. Bonyhard declared under the penalty of perjury that he that the agent's promise meant that nothing would leave the interrogation room.

*Exhibit D*. The government speculates that Mr. Bonyhard's background should make him more aware of the criminal process, but nothing in Mr. Bonyhard's past indicates a situation in which he has had experience with a federal agent telling him that he shouldn't be afraid because what he says, "isn't going anywhere." By the time this promise was made by the agent, Mr. Bonyhard had spent about five hours in custody (four hours in the security office chained to a metal bench and one hour of intense interrogation). He had been in and out of sleep on the metal bench and without a full night's sleep.  He had also requested to call his counsel multiple times before his interrogation formally began, and unequivocally requested counsel after hearing his *Miranda* rights. Yet, these requests were not respected. In its response, the government notes that many of the voluntariness cases contain a combination of a promise and deliberately ignoring prior invocations of a right to counsel – exactly as we have here. Dk. 18 at 24.

The government ends its response by listing cases with "far more compelling" facts than Mr. Bonyhard that did not result in suppression of statements of involuntary. But none of these cases contain what we have here – a promise that directly contradicts previous *Miranda* warnings. As this Court is aware, the Ninth Circuit has before held that single question during interrogation, if the defendant thought it would be better if the judge were told that she had cooperated or had not cooperated—was unconstitutionally coercive, rendering the subsequent confession involuntary. *Tobias v. Arteaga,* 996 F.3d 571, 582 (9th Cir. 2021).  This is all a way of saying that an individual doesn't need to be starved or sleep-deprived in order for his statements to be involuntary. This is also all a way of saying that false promises are special. "[F]alse promises stand on a different footing." *United States v. Preston*, 751 F. 3d 1008, 1026 (9th Cir. 2014). The Supreme Court explained that the "test of voluntariness is whether a confession was…*obtained by any direct or implied promises, however slight[.]" Hutto v. Ross,* 429 U.S. 28, 30 (1976)(emphasis added).

8                                    **25-CR-01227-BTM**

Additionally, it is clear from the record that the agent's promise had its intended effect. *Only after the agent's promise does* Mr. Bonyhard admit to knowing where people take the drugs out of cars in Riverside and admitting to previously driving drugs in the Los Angeles area. Prior to this promise, Mr. Bonyhard did not mention anything about his previous experience driving narcotics in Los Angeles or his knowledge of narcotics trafficking in Los Angeles. Prior to the agent's promise, Mr. Bonyhard refused to share information about driving drugs in Los Angeles, information about alien smuggling, or knowing where drugs are dropped off in Los Angeles, and expressed doubt that the officer was acting in his best interest. Only after that agent's promise did this change.

Therefore, Mr. Bonyhard asks that this Court suppress his statements as involuntary and/or in violation of *Miranda* because the agent's promise invalidated his previous *Miranda* waiver.

**V. Conclusion**

Mr. Bonyhard respectfully requests this Court grant his motion to suppress his statements.

Respectfully submitted,

Dated:  June 17, 2025          *s/ Jamie Elizabeth Schmid*
                              Jamie Elizabeth Schmid
                              Federal Defenders of San Diego, Inc.
                              Attorney for Mr. Bonyhard
                              Email: Jamie_Schmid @fd.org

MR. BONYHARD'S REPLY TO MOTION TO SUPPRESS STATEMENTS